640 N.E.2d 31 (1994)
266 Ill. App.3d 631
203 Ill.Dec. 604
ILLINOIS MASONIC MEDICAL CENTER, Plaintiff-Appellee,
v.
A C & S, et al., Defendants-Appellants.
No. 1-93-2578.
Appellate Court of Illinois, First District, Third Division.
September 7, 1994.
Cooney and Conway, Chicago, for appellee.
Tressler, Soderstrom, Maloney & Priess, Chicago, for appellant, Flintkote Co.
Bell, Boyd & Lloyd, Chicago, for appellant, W.R. Grace & Co., Conn.
Popham, Haik, Schnobrich & Kaufman, Ltd., Washington, DC, for appellant, W.R. Grace & Co.
Kelley, Drye & Warren, Chicago, for appellant, Owens-Corning Fiberglas Corp.
Michael P. Connelly, Ltd., Chicago, for appellant, Fibreboard Corp.
Justice GREIMAN delivered the opinion of the court:
This interlocutory appeal by defendants, manufacturers of asbestos-containing products sold to plaintiff, Illinois Masonic Medical Center, arises from the trial court's certification of the following question pursuant to *32 Illinois Supreme Court Rule 308 (134 Ill.2d R. 308):
"Whether section 13-214(b) of the Illinois Code of Civil Procedure applies to an action against an entity which designed and/or manufactured, but did not install, a material or product which was incorporated into a building during construction."
We answer this question in the negative with certain exceptions noted, and file this opinion pursuant to Illinois Supreme Court Rule 23(a)(1). Official Reports Advance Sheet No. 15 (July 20, 1994), R.23, effective July 1, 1994.
Plaintiff contracted for the construction of buildings in the mid-1960's into which were introduced asbestos-containing products allegedly "mined, manufactured, processed, sold, marketed and placed * * * into the stream of commerce" by the defendants.[1]
In 1965 the Illinois legislature passed the State's first statute of repose for construction-related activities (Ill.Rev.Stat.1965, ch. 83, par. 24(f)), which is now codified in section 13-214(b) of the Illinois Code of Civil Procedure. (735 ILCS 5/13-214(b) (West 1992).) The present statute provides in pertinent part:
"No action based upon tort, contract or otherwise may be brought against any person for an act or omission of such person in the design, planning, supervision, observation or management of construction, or construction of an improvement to real property after 10 years have elapsed from the time of such act or omission (emphasis added)." 735 ILCS 5/13-214(b) (West 1992).
Plaintiff commenced this action in 1990 alleging property damage arising from the integration of defendants' products into its medical buildings. Defendants filed a motion to dismiss the complaint interposing a defense under section 13-214(b), which the trial court granted and then reversed on plaintiff's motion to reconsider. Subsequently, the court granted defendants' motion for interlocutory appeal certifying, pursuant to Illinois Supreme Court Rule 308 (134 Ill.2d R. 308), the question which we now consider.
Before examining the scope of section 13-214(b) protection, we consider plaintiff's assertion that the statute does not apply retroactively to claims arising out of building construction prior to its adoption in 1982. The construction statute of repose formerly contained language that "[t]he limitations of the Section shall apply to all acts or omissions which occur on or after November 29, 1970." (McIntosh v. A & M Insulation Co. (1993), 244 Ill.App.3d 247, 253, 185 Ill.Dec. 69, 614 N.E.2d 203, citing Ill.Rev.Stat.1981, ch. 110, par. 13-214(e); see 735 ILCS 5/13-214(e) (West 1992).) In September 1981 the legislature amended this statute to omit subsection (e), evincing its intent to make the legislation retroactive in application. (McIntosh, 244 Ill.App.3d at 253, 185 Ill.Dec. 69, 614 N.E.2d 203, citing DeSeve v. Ladd Enterprises, Inc. (1985), 137 Ill.App.3d 796, 800, 92 Ill.Dec. 365, 484 N.E.2d 1220; Matayka v. Melia (1983), 119 Ill.App.3d 221, 224, 74 Ill. Dec. 851, 456 N.E.2d 353.) Although the construction of plaintiff's medical buildings occurred 30 years prior to the litigation at issue, section 13-214(b) applies to plaintiff's claim. Whether or not the statute absolves defendants from liability due to the late filing of the complaint, however, presents another issue.
Defendants construe section 13-213(b) to protect two categories of people as evinced by the comma separating those who effect the "design, planning, supervision, observation or management of construction" and those who render the "construction of an improvement to real property." Defendants classify their manufacture of mass-produced asbestos-containing products as pertaining to the latter category although such products *33 were installed by other persons into the properties at issue.
The cardinal rule of statutory construction is to ascertain and give effect to the true meaning of the legislature. (McIntosh, 244 Ill.App.3d at 251, 185 Ill.Dec. 69, 614 N.E.2d 203, citing Hernon v. E.W. Corrigan Construction Co. (1992), 149 Ill.2d 190, 194, 172 Ill.Dec. 200, 595 N.E.2d 561.) Courts look to the statutory language as the best indication of the drafters' intent. (McIntosh, 244 Ill.App.3d at 251-52, 185 Ill.Dec. 69, 614 N.E.2d 203, citing People v. Boykin (1983), 94 Ill.2d 138, 141, 68 Ill.Dec. 321, 445 N.E.2d 1174.) Where the language is unambiguous, a court must enforce the law as enacted without considering other aids. McIntosh, 244 Ill.App.3d at 251, 185 Ill.Dec. 69, 614 N.E.2d 203, citing County of Du Page v. Graham, Anderson, Probst & White, Inc. (1985), 109 Ill.2d 143, 151, 92 Ill.Dec. 833, 485 N.E.2d 1076.
Defendants argue that an interpretation of section 13-214(b) to exclude manufacturers from the repose period would deny them equal protection (Ill. Const. 1970, art. I, § 2) since other members of the same class (i.e., architects and engineers) would be immune from liability after 10 years. Defendants cite Skinner v. Anderson (1967), 38 Ill.2d 455, 231 N.E.2d 588, claiming the Illinois Supreme Court invalidated the predecessor statute to section 13-214(b) on equal protection grounds because it "arbitrarily" denied manufacturers protection from litigation after the repose period expired.
Defendant's argument misconstrues the meaning and rationale of Skinner v. Anderson and its progeny.
The statute invalidated in Skinner v. Anderson excluded from its protection "any owner, tenant or person in actual possession and control of the improvement" but not "any person performing or furnishing the design, planning, supervision of construction, or construction of such improvement to real property." (Ill.Rev.Stat.1965, ch. 83, par. 24(f).) The supreme court held the statute unconstitutional because it excluded persons based upon their status rather than whether they engaged in the enumerated activities. The court also distinguished the former repose statute from section 13-214(a),[2] the counterpart statute of limitation to section 13-214(b), which did not exclude persons based upon their status but, instead, protected anyone who engaged in "the enumerated activities (emphasis in original)." (People ex rel. Skinner v. Hellmuth, Obata & Kassabaum, Inc. (1986), 114 Ill.2d 252, 261, 102 Ill.Dec. 412, 500 N.E.2d 34 (Hellmuth) (general contractor's surety not covered by enumerated activities of section 13-214(a)); see Continental Insurance Co. v. Walsh Construction Co. (1988), 171 Ill.App.3d 135, 141-42, 121 Ill.Dec. 83, 524 N.E.2d 1131 (section 13-214(a) does not violate equal protection by limiting the liability of builders while denying such protection to owners and suppliers).) Those activities are the "design, planning, supervision, observation or management of construction, or construction of an improvement to real property" without reference to manufacturing or even "furnishing" materials or otherwise. Compare 735 ILCS 5/13-214(a) (West 1992), with Ill.Rev.Stat.1965, ch. 83, par. 24(f).
Contrary to defendants' assertion, the legislative history of section 13-214(b) fails to extend its application to manufacturers. (See 79th Ill.Gen.Assem., House Proceedings, May 25, 1979 (Debate), at 29-38.) In their efforts to broaden the application of the statute, defendants attach great significance to Representative John Dunn's use of the term "anyone" in reference to whom the statute applies; i.e., "It would apply to the architect, the engineer, the contractor, anyone who is involved in the * * * planning, supervision, operation, or management of construction, or the construction of the improvement to real property (emphasis added)." (Debate, at 31.) *34 However, the relevant portions of the transcript reveal Representative Dunn's references to "anyone" or "those who construct improvements to real property" in context of the enumerated activities "to provide some relief for professionals, who are trying to exercise their sound judgment in the design and construction or improvements to real property[.]" (Debate, at 29, 32.) Federal and State courts have determined the General Assembly enacted section 13-214(b) to protect architectural engineering firms, general contractors and sub-contractors from open-ended tort liability. Hilliard v. Lummus Co. (7th Cir.1987), 834 F.2d 1352, 1358, n. 6 (firm hired to provide "engineering and technical services" in modernization of cocoa plant included within scope of section 13-214(b) to preclude personal injury action brought by plant employee); Kleist v. Metrick Electric Co. (1991), 212 Ill.App.3d 738, 156 Ill.Dec. 839, 571 N.E.2d 819 (installer of circuit breaker considered essential part of electrical system as an improvement to real property granted section 13-214(b) protection).
After determining section 13-214(a), and by extension section 13-214(b),[3] in a constitutional effort to protect persons engaging in the enumerated activities, the Illinois Supreme Court discussed without resolving whether a manufacturer could seek refuge in the 10-year statute of repose for construction activity. In St. Louis v. Rockwell Graphic Systems, Inc. (1992), 153 Ill.2d 1, 178 Ill.Dec. 761, 605 N.E.2d 555, a newspaper employee injured by a printing press 12 years after it was installed filed suit against the company primarily responsible for its design and manufacture and the contractor responsible for its installation. In assessing the manufacturer's liability under section 13-214(b), the court asked whether the printing press was an improvement to real property and, if so, whether the manufacturing company fell within the enumerated activities. St. Louis, 153 Ill.2d at 4-5, 178 Ill.Dec. 761, 605 N.E.2d 555.
Since we are not asked to determine whether defendants' products constitute "improvements to real property," we focus on the second issue raised in St. Louis and answered specifically by recent case law.[4]
In State Farm Mutual Automobile Insurance Co. v. W.R. Grace & Co.Conn. (7th Cir., 1994), 24 F.3d 955, 956, the Seventh Circuit determined section 13-214(b) did not protect a manufacturer of a fireproofing material containing asbestos from tort liability since the activities in which it engaged could not reasonably be interpreted as design, supervision, observation, planning, etc. The court determined the manufacturer's link to the improvement at issue was limited to furnishing a mass-produced product to the contractor or subcontractor for installation. In essence, the manufacturer's link was too remote from the construction of the improvement for section 13-214(b) protection:
"Every product used in the construction of a building has attributes that constrain its use, hence `specifications' express or implied for that use. If this is enough to make the supplier of the product a delegate of the architect, furnishing design specifications that otherwise the architect himself would have to furnish, the statute will embrace every supplier of building materials. Surely, that was not intended." (State Farm, 24 F.3d at 957.)
If the manufacturer was negligent, its negligence had nothing to do with the product's installation or application but, instead, concerned the product's design to include asbestos and the failure to test and warn about the product. State Farm, 24 F.3d at 957.
Whether the manufacturer qualifies for protection under the penumbra of section 13-214(b) depends upon whether it participated in any of the "notably disjunctive" list of *35 enumerated activities. (Herriott v. Allied Signal, Inc. (7th Cir.1993), 998 F.2d 487, 490.) Courts have generally denied coverage to manufacturers of mass-produced products designed for installation by other individuals. See, e.g., State Farm, 24 F.3d 955 (defendant mass-produced fireproofing material containing asbestos with installation instructions affixed to package); Landry v. Keene Corp. (N.D.Ill.1993), 811 F.Supp. 367 (defendant manufactured asbestos-containing fireproofing material installed by subcontractor); Asbestospray, 247 Ill.App.3d 258, 186 Ill.Dec. 462, 616 N.E.2d 652 (defendant manufactured asbestos-containing products generally available to the public and not custom designed for the project at issue); cf. Signode Corp. v. Normandale Properties, Inc. (1988), 177 Ill.App.3d 526, 126 Ill.Dec. 797, 532 N.E.2d 482 (defendant afforded section 13-214(b) protection as the general contractor which designed and supervised construction at issue rather than as the supplier of building materials).
In order to be afforded the benefit of this statute, a manufacturer must perform some role related to the construction site beyond furnishing standard products generally available to the public and not custom designed for the project. (Asbestospray, 247 Ill. App.3d at 266, 186 Ill.Dec. 462, 616 N.E.2d 652; see Herriott, 998 F.2d 487 (defendant manufactured, designed and installed coke ovens and ancillary equipment to improve coke processing facility); Hausman v. Monarch Machine Tool Co. (7th Cir.1993), 997 F.2d 351 (defendant designed, planned and supervised installation of its manufactured components for anneal line); Witham v. Whiting Corp. (7th Cir.1992), 975 F.2d 1342 (defendant custom manufactured crane for use at premises); cf. McIntosh, 244 Ill. App.3d at 250-51, 185 Ill.Dec. 69, 614 N.E.2d 203 (argument that section 13-214(b) did not bar action against installers of asbestos materials because they were sellers or distributors of asbestos-containing products rejected).) To interpret "construction of an improvement to real property" as provided in section 13-214(b) to cover manufacturers of mass-produced products would extend the statute beyond what the General Assembly intended. See Heider v. W.R. Grace & Co.Conn. (N.D.Ill.1993), 815 F.Supp. 1137 (manufacturer of fireproofing material denied section 13-214(b) protection in asbestos-property damage case).
Therefore, section 13-214(b) of the Illinois Code of Civil Procedure does not apply to an action against an entity which designed and/or manufactured but did not install a material or product which was incorporated into a building during construction unless the manufacturer can demonstrate its role in the construction extended beyond furnishing standard products generally available to the public and not custom designed for introduction into the construction project. Asbestospray, 247 Ill.App.3d at 266, 186 Ill.Dec. 462, 616 N.E.2d 652.
For the foregoing reasons, we remand this case for a hearing at which the trial court should examine the relationship between defendants' products and the building construction at issue to determine whether defendants' products are generic or mass-produced for public consumption, which is what they appear to be. If so, defendants fall outside the protection of section 13-214(b).

Remanded with directions.
TULLY, P.J., and CERDA, J., concur.
NOTES
[1] Flintkote Company and Armstrong World Industries, Inc. manufactured floor tile; Keene Corporation manufactured pipe covering and ceiling tile; Owens-Corning Fiberglas Corporation manufactured pipe covering, block insulation and insulating cement; W.R. Grace and Company manufactured spray-on fireproofing; Fibreboard Corporation manufactured pipe covering and insulating cement; U.S. Gypsum Company manufactured cement, joint compound tape, gypsum board, ceiling finish; National Gypsum Company manufactured cement and ceiling tile; and Combustion Engineering manufactured cements.
[2] Section 13-214(a) provides:

"Actions based upon tort, contract or otherwise against any person for an act or omission of such person in the design, planning, supervision, observation or management of construction, or construction of an improvement to real property shall be commenced within 4 years from the time the person bringing an action, or his or her privity, knew or should reasonably have known of such act or omission." 735 ILCS 5/13-214(a) (West 1992).
[3] "That subsection (a) and (b) of section 13-214 should be construed together is evident from the fact that the language in subsection (b) specifically refers to subsection (a)." Hernon, 149 Ill.2d at 197, 172 Ill.Dec. 200, 595 N.E.2d 561.
[4] However, "Given the two questions identified by the supreme court in St. Louis, even a preliminary finding that a product constitutes an `improvement' does not automatically bring the manufacturer within the purview of section 13-214(b)." People v. Asbestospray Corp. (1993), 247 Ill.App.3d 258, 266, 186 Ill.Dec. 462, 616 N.E.2d 652.